(Nos. 76-CC-2199, 76-CC-3194 cons.—

DELTA SYSTEMS CORPORATION and MAY & SPEH DATA CENTER, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 11, 1985.*

*Order filed January 8, 1986.*

JOHN K. KALLMAN, for Claimants.

NEIL F. HARTIGAN, Attorney General (ROBERT J. SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This matter arose out of contracts between Delta Systems and May & Speh Data Center and the State of Illinois for professional services in an effort to establish a computer programming system for the Industrial Commission of the State of Illinois.

The first contract was No. 741241 and was dated October 14, 1974. This contract was not filed as required by section 15 of the State Comptroller Act (Ill. Rev. Stat.

1975, ch. 15, par. 215) and section 9.01 of The Illinois Purchasing Act (Ill. Rev. Stat. 1975, ch. 127, par. 132.9a).

The complaint in this matter was filed in 1976 and the docket sheet is 20 pages long.

In Count I of the complaint, Delta claims that the State, through contract M.I.D. No. 741241 with the Illinois Industrial Commission, owes Delta $146,081.00. To this count, the State objects on the grounds that the contract was not filed as required by the statute, and it was admitted by a representative of the Illinois Industrial Commission that he failed to file said contract.

During January 1975, the parties negotiated a second contract, M.I.D. No. 750221 which expressly superseded No. 741241. This contract was signed by both sides and was executed on February 11, 1975. It is the State's contention that the subject matter of contracts Nos. 741241 and 750221 was the same, that the first contract was merged into the second contract, effectively setting forth the rights on the prior contract. See 95 Ill. App. 3d, 1044.

It is the State's contention that Delta had the opportunity to provide the services but failed to protect itself on that matter, consequently waiving the opportunity to secure the money owed it and assuming the risk that it would be paid as it had been until that time.

In Count II, Delta claims it entered into a fourth contract with the State for $65,000.00 under contract No. 750901. Delta claims it has performed services on that contract in the amount of $49,370.00, has been paid a total of $20,370.00, leaving a balance claimed of $29,000.00 under this contract. Respondent states that

Delta is not entitled to receive anything from the State because its contract No. 750901 was not completed and was not at all satisfactory.

In January 1975, the Department of Finance cancelled M.I.D. No. 741241 because Delta was slow in performing its duties and the State decided to cancel out of the Federal OSHA program. The Illinois Industrial Commission chairman directed that invoices for work performed under No. 741241 be submitted against No. 750221. Delta received payments out of funds allocated to No. 750221 for the $173,325.13 in work performed under No. 741241 and prior to the execution of No. 750221. When the IIC and the Department of Finance investigated the payment problems, the State decided to recapture the $173,325.13 it wrongfully had taken from No. 750221 by withholding that amount from Delta invoices submitted during May and June of 1975.

The original complaint in this case was filed by Delta Systems Corporation December 20, 1976, and the claim of May & Speh Data Center was later consolidated with this case. Pioneer Bank and Trust Company is an intervening Claimant.

On September 3, 1975, there was an addendum to contract No. 750221 requiring Delta to perform additional services and increasing the amount payable on that contract to $453,210.00. This addendum contract is noted as No. 750221A, making a total for the contracts $597,895.75, on which Delta has been paid to date the amount of $451,814.75, leaving a total balance of $146,081.00.

The State claims it has paid Delta $36,370.00 on contract No. 750901, leaving a balance of $13,000.00.

May & Speh were subcontractors of Delta under contract Nos. 750221 and 750221A and held a security interest in the amounts due Delta under those contracts. This security interest was perfected by filing a financial statement with the Secretary of State and claims $146,081.00 in connection with these contracts. May & Speh further claims $42,710.06 which the State paid to Delta in alleged violation of an agreement with May & Speh, in violation of the perfected security interest.

Pioneer Bank, the intervenor, is seeking $98,773.39 on a basis of a security interest and contracts Nos. 750901, 741241 and 750901A. A stipulation was filed between Delta, Pioneer Bank and May & Speh. This stipulation provided:

1. Delta acknowledged a debt to Pioneer for $98,773.39.
2. Delta owes May & Speh $115,881.81.
3. Pioneer Bank has a valid and enforceable security interest to secure payment of $98,773.39.
4. May & Speh has a valid claim for $115,888.81.
5. May & Speh's claim is inferior to Pioneer's claim.
6. Delta withdrew any defenses to the claims of Pioneer and May & Speh.

The State contends that the contract No. 741241 was not filed with the Comptroller pursuant to the State Comptroller Act and the Illinois Purchasing Act. It further contends that Delta's performance was unsatisfactory. However, some payments were made and services performed herein. The contention of the State is that the State has paid Delta $36,370.00 under contract No. 750901 and the balance is $13,000.00 because the contract was not complete and was unsatisfactory. This defense of the State was refuted by evidence of the

Claimants. There was no evidence by the State except that brought out by cross-examination.

The State further contends that it cancelled No. 741241 with sufficient notice. As to the claims of May & Speh, the State contends it had no contractual obligation to May & Speh and that it owes Delta nothing on Nos. 750221 and 750221A.

The State's briefs are silent as to the claim of Pioneer Bank. There was also a claim by R. H. Factor as intervenor. In view of the fact this claim was not pursued and abandoned, the Court does not think it merits consideration. Delta claimed that Respondent failed to offer evidence in support of the affirmative defense, and the Court believes it has not.

The case has been prolonged in this Court from 1976 until the present time. There are approximately 900 pages of testimony and, as stated before, the docket sheet is 20 pages long.

There is considerable evidence in the record that the system installed was very deficient and exhibit 15 states that the case hearing system produces none of the Commission's routine reports of case hearing activity and is incapable of generating the alphabetic reference listing of cases by applicant. This exhibit also states that the accident reporting system has been completely dormant since the Legislature cut the appropriation. Other items in the record show the system failed in many ways and did not accomplish the end for which it was purchased.

It is the opinion of this Court that Delta is entitled to an amount of $146,081.00 on Count I of the complaint, plus $13,000.00 under Count II, or a total of $159,081.00,

less $50,000.00 for unsatisfactory performance, for a total of $109,081.00.

## ORDER

HOLDERMAN, J.

This matter comes before the Court after oral argument was heard on September 23, 1985. There has also been filed in this cause a stipulation, dated September 14, 1981, by and between Pioneer Bank and Trust Company, formerly Pioneer Trust and Savings Bank, May & Speh Data Center, and Barry S. Grossman.

The Court, having reviewed the record and heard the arguments in this cause, is of the opinion that the Court's opinion, dated July 11, 1985, is correct and reaffirms said opinion. Order of distribution is to be made according to said opinion.